**JUDGE SCHEINDLIN**

**10 CIV 1675**

Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, P.C.
19 Fulton Street, Suite 408
New York, New York 10038
212-425-2600
*Attorneys for Petitioner*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x
GUYA SINGH RAI

                *Petitioner.*     : **PETITION TO VACATE**
                                     : **ARBITRATION AWARD**

-against-

BARCLAYS CAPITAL INC.,

                *Respondent.*

------------------------------------- x

**PETITION TO VACATE ARBITRATION AWARD**

Petitioner Guya Singh Rai (Rai), through its undersigned attorneys, hereby petitions this Court for an Order vacating the arbitration award entered for Barclays Capital, Inc. (Barclays) on December 2, 2009, in the FINRA arbitration captioned FINRA Dispute Resolution Arbitration Number 08-04142, *Guya Singh Rai v. Barclays Capital, Inc.* (the Arbitration), and in support as follows:

### I. NATURE OF THE ACTION

1. This petition is brought pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., to vacate the Arbitration award entered against Rai and in favor of Barclays Capital, Inc.

2. Following his termination from Barclays Capital, Petitioner Rai commenced a FINRA arbitration proceeding, pursuant to the terms of his employment agreement with Respondent Barclays.

1

3. The arbitration panel decision upheld his termination from Respondent Barclays, and dismissed his claims of employment discrimination based upon race and national origin, wrongful termination, breach of employment contract, and violations of Federal, State and City anti-discrimination laws.

4. The Arbitration involved race discrimination against Petitioner Rai by Barclays related to software problems with Barclay's trading system, Open Link.

5. Three arbitration sessions were held, beginning on November 18, 2008, with the final session being held on November 19. 2009. The Arbitration was held before a panel of three arbitrators, Aaron Tyk, William H. Morley, Jr., and John N. Polakas.

6. One of the arbitrators, Aaron Tyk, was the subject of an inquiry into his professional ethics. Petitioner was informed of this investigation. That Arbitrator Tyk was being investigated for his unethical contact, at a minimum, creates the appearance of bias.[1]

7. This flies in the face of the Arbitrator's Manual, published by the Securities Industry Conference on Arbitration, which states "Arbitrators must be fair and impartial and must also **appear** to be fair and impartial" (Emphasis added).

8. Strangely, and without any explanation, the record of the first arbitration proceeding is missing, and no record or transcript of the first arbitration session exists.

9. After the petitioner purportedly concluded his case in chief, Respondent made an oral motion to dismiss on the record. *See* Exhibit A, Transcript of Arbitration, November 18,

---

[1] "The rule of arbitration…rest[s] on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 150 (1968) (Black, K., plurality).

2009, p. 64.

10. Neither the decision issued on November 19, 2009, nor the panel's Order sent to Petitioner Rai, dated December 2, 2009 (*See* Exhibit B, December 2) contained any explanation whatsoever as to the Arbitration panel's legal reasoning for dismissing the case, assuming there was any legal basis for dismissing the case and Petitioner Rai adamantly asserts there was not, nor on what facts the case was decided. The fact that Petitioner Rai was not given any explanation as to why his case was disposed could only lead to the conclusion that there was no legal basis to dismiss his claims.

11. Respondent first argued that Petitioner Rai's claim for breach of contract should be dismissed because "claimant was a employee at-will…[a]nd his offer letter express says that" *See* Exhibit A, p. 65.

12. Second, respondent argued that Petitioner Rai has not offered any evidence to support a *prima facie* claim of discrimination, and that he cannot point to any instances where he was deliberately the target of race discrimination.

13. Under the standard set forth in *McDonnell Douglas*, Petitioner Rai has certainly laid out a prima facie claim of discrimination in that he:

   a. Is the member of a protected class, as he is Asian;
   b. Was qualified to complete his job at IT Manager,[2];
   c. He was subject to a series of adverse employment actions:
      i. Barclays' refused to investigate his complaints regarding the software issues,
      ii. Barclays' refused to give notice or reasoning for his "for cause" termination, in violation of his employment agreement, and

3

      iii. Barclays' termination of his employment.

   d. And that there was a causal connection between his status as Asian and his adverse employment action in that he was the only Asian subject to an adverse employment action for any alleged misconduct, and all individuals in upper management and operations responsible were Caucasian and not subject to adverse employment actions.

14. Following an oral argument to dismiss, with no explanation the arbitration panel granted Respondent's Barclays motion to dismiss, and dismissed all of Petitioner Rai's claims.

15. The arbitration award should be set aside because, inter alia, the arbitration panel's decision was issued in violation of the Federal Arbitration Act, 9 USC, §10 (a) (1).

16. Accordingly, the arbitration decision should be vacated.

## II. PARTIES

17. Petitioner Rai is an individual residing within the state of New York, residing at 118-18 Union Turnpike, Kew Gardens, NY 11415.

18. Respondent Barclays Capital is a corporation organized and existing under the laws of New York, with a principal place of business located at 200 Park Avenue, New York, NY 10166.

## III. JURISDICTION AND VENUE

19. Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. § 1391 and 9 U.S.C. § 10(a) because a substantial part of the events giving rise to the claims set forth herein, as well as the Arbitration, occurred in this District.

---

[2] Petitioner Rai and was not qualified to recode software or to personally correct the errors in the reporting software

## IV. BACKGROUND

20. Mr. Rai is Asian. Barclays unlawfully terminated Petitioner Rai in violation of Federal, State and City anti-discrimination laws. Due to a pattern of discrimination at Barclays, Petitioner Rai was blamed for the malfeasance of Caucasian employees, malfeasance that Petitioner Rai himself has repeatedly complained about to his superiors.

21. Further, when Petitioner Rai complained about being falsely accused, Barclays breached the contractual agreement that it had with Petitioner Rai to fully investigate the allegations. Finally, since Barclays accused Petitioner Rai of conduct that would warrant a for cause termination, Barclays was contractually required pursuant to the terms of the Employment Agreement to give him notice to cure before a for cause termination. Barclays did not give him notice and thereby breeched his employment agreement in this regard as well. *See* Exhibit G.

22. Petitioner Rai was hired by Barclays on February 13, 2008 as a Manager in the Information Technology (IT) Department, earning $110,000 annually.

23. During this time, Petitioner Rai was an excellent employee, performing his job duties with the utmost responsibility and care.

24. While employed as an Application Support Person in the Information Technology department, Petitioner Rai became aware of a problem within the software that Barclays uses to execute trades. The problem resulted in trades not being registered on the day the transactions were actually made, resulting in a number of problems for traders including, but not limited to financial loss. Petitioner Rai did not perform financial trades while at Barclays. Petitioner is <u>not</u> a financial trader and is not trained or licensed to perform

trades.

25. Once aware of the problems, Petitioner Rai had notified Barclays' management of the error within the system over twenty (20) times. None of Petitioner Rai's complaints regarding the operation and design flaws of the Open Link reporting software were taken seriously by the chain of command above Petitioner Rai, including Jim Tomkins, Vlad Zeeman and Natalie Naughton.

26. In breach of the employee agreement between Petitioner Rai and Barclays, Barclays never addressed Petitioner Rai's complaints in any manner, and the issues brought up by Petitioner Rai went uncorrected, resulting in the continuing flawed operation of the Open Link system. *See* Exhibit A, pg. 63.

27. Petitioner Rai's signed employment handbook states that if an employee has an issue of concern or a complaint to be made, Barclay's will look into the issue, and conduct a meeting to address the complaint. Petitioner Rai states that Barclays had completely refused his repeated requests to address the issues present in the Open Link system, and blatantly allowed it to continue operating in a faulty manner.

28. At no point was there any investigation into the problems with the Open Link software that Petitioner Rai had brought to management's attention, and no further action was taken regarding the investigation of the situation, all in violation of Respondent Barclays' contractual obligations owed to Petitioner.

29. The fact that Petitioner Rai was subject to different rules than other Caucasian employees regarding the reporting of problems in the workplace furthers his argument that he has been treated differently as a result of his race and nationality, and that he was being set up as a scapegoat by his superiors, who were Caucasian.

30. On or about May 29, 2008, an email was sent internally stating that the file delivery process had failed. The complaints concerned the failures of the Open Link software to perform satisfactorily. *See* Exhibit C.

31. As a result of this failure, Petitioner Rai was warned by Human Resources regarding the status of the system and the issues that it presented. Before this meeting, Petitioner Rai had notified his supervisors a number of times of the bugs that were present in the software, and that the issue needed to be addressed by the software engineers.

32. On another occasion, on or about July 16, 2009, the same error in the Open Link software system caused a trade not to be reported, causing a loss of $ 400,000. *See* Exhibit C.

33. In an email, dated May 29, 2008, from Henry Weitzner, head of a trading desk, regarding one of the failed trades, which had caused the firm a $200,000 loss. Mr. Weitzner sent this email to the development team and demanded to know why the software had failed to book his trade properly and caused monetary loss. He proceeds to demand that operations underwrite the loss incurred as a result of the error, and not his department. Petitioner Rai was not addressed in this email at all. <u>The FINRA Arbitration Panel ignored Evidence that exonerated Petitioner Rai from any wrongdoing.</u> *See* Exhibit A, pg 54, Exhibit C.

34. Following this incident, Petitioner Rai had another meeting with Human Resources, where he was informed that he would be terminated on July 16, 2008, with an effective last day of work on August 15, 2008. See Exhibit D.

35. This was extremely distressing and confusing for Petitioner Rai that as Manager in the Information Technology department, he was tasked with report the software failures to development and upper management, which he did. Petitioner Rai was NOT responsible,

nor capable of fixing the software on the basis of its code, nor could Petitioner Rai correct the error that was causing the problems concerning the reporting of the trades. *See* Exhibit A, at pg. 54.

36. Only a software engineer could physically change the code within the software to fix the bug that had been discovered within the Open Link software that had caused the reporting error. *See* Exhibit A, at pg. 44.

37. Further, Petitioner Rai was subjected to the two HR inquiries in less than two (2) weeks, Petitioner Rai was clearly being targeted by his supervisors at Respondent Barclays Capital. Petitioner Rai had continually complained about the system, requested changes be made to correct the errors in the software, and had requested an investigation into the problems surrounding the Open Link, only to be terminated when his complaints had fallen upon deaf ears.

38. Petitioner Rai believed his termination to be in violation of his civil rights, as he was the only Asian targeted for an adverse employment action when he had no involvement in Open Link trades, and filed a claim with FINRA on November 10, 2008.

39. Petitioner Rai followed the procedure for an arbitration proceeding with FINRA, seeking compensatory damages in the amount of $250,000, punitive damages in the amount of $500,000, reinstatement of his position as manager, attorneys' fees, interest, costs, and any and all relief the Panel deems appropriate. *See* Complaint, Exhibit E

40. The arbitration was held beginning on November 18, 2009, and continued on to November 19, 2009 before a panel of three arbitrators.

41. During this arbitration, the arbitration panel erred in refusing to hear evidence pertinent and material to the controversy brought by Petitioner Rai.

42. As part of respondent's defense, respondent claimed that the same individuals had hired and fired Petitioner Rai, effectively trying to employ the "same actor" defense to justify Respondent's defense that it could not have discriminated against Petitioner Rai.

43. However, Petitioner Rai had claimed during his arbitration that Claire Reed hired him, while Jim Tomkins terminated him. Neither Tomkins, nor Reed were allowed to testify at the arbitration. <u>Again, the Arbitrators ignored crucial evidence</u>

44. Jim Tomkins had been present at the arbitration on November 19, 2009, but was never given an opportunity to testify while he was present, as the arbitrators had decided to rule on respondent's Motion to Dismiss without his testimony. *See* Exhibit A, p. 26

45. In effect, the panel of arbitrators denied Petitioner Rai the opportunity to challenge the claims made by Respondent Barclay regarding the "same actor" defense, impeding Petitioner Rai's right to a fair arbitration proceeding, and to clarify their claims.

46. Further, Petitioner Rai had provided the Affidavit of Ronald Moore, a coworker employed as Software Engineer, who was familiar with the operations of both Barclays implementation of the Open Link system, the documented problems with the Open Link reporting system, as well as the details of Petitioner Rai's employment with Respondent Barclays. Mr. Moore, an African American, also avers to a pattern of race discrimination at Barclays.

47. The proposed affidavit of Ronald Moore (*See* Exhibit F) contained a number of details regarding the documented problems of the Open Link software, as well as the nature of the problem being on a software coding level that required the expertise of a software engineer.

48. When presented with the Affidavit of Ronald Moore, the arbitration panel refused to

9

admit the affidavit of Ronald Moore, stating that anything contained in the affidavit would be considered hearsay. Mr. Moore had a serious family emergency and could not be present on the day of the arbitration. The arbitration panel refused to continue the arbitration on a day when Mr. Moore could appear.

49. The refusal to admit Mr. Moore's affidavit has deliberately prevented Petitioner Rai from presenting all relevant evidence relating to his claims of discrimination, wrongful termination and breach of contract. The arbitrators were aware of the evidence, refused to consider it thereby causing great prejudice to the Petitioner.

50. Throughout the course of the arbitration process, the arbitration panel consistently violated 9 USC § 10 (a)(1) by refusing to postpone the hearing in part, and refusing to hear evidence, pertinent and material to the Petitioner's claims, wholly ignoring sworn testimony relevant to Petitioner's claims and refusing to allow the testimony of relevant witnesses.

WHEREFORE, Petitioner Rai, respectfully requests that this Court vacate the Arbitration award and award to Petitioner such other and further relief as the Court deems just.

Dated:   New York, New York
         March 2, 2010

                                                Walker G. Harman, Jr.
                                                THE HARMAN FIRM, PC
                                                *Attorneys for Plaintiff*
                                                19 Fulton Street, Suite 408
                                                New York, New York 10038
                                                (212) 425-2600

To:

Barclays Capital, Inc.
200 Park Avenue
New York, New York 10166