**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------- X

**GUYA SINGH RAI,**

        **Petitioner,**

    **- against -**

**BARCLAYS CAPITAL INC.,**

        **Respondent.**

--------------------------------------------------- X

**OPINION AND ORDER**

**09 Civ. 1675 (SAS)**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/15/10

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Guya Singh Rai petitions the Court to vacate a final award (the

"Petition") entered in favor of Barclays Capital Inc. ("Barclays") in an arbitration

proceeding between the two parties (the "Proceeding").  Rai contends that the

Arbitration Panel erred in "refusing to postpone the hearing,"[1] excluding

"evidence pertinent and material to the controversy,"[2] and failing to give a

---

[1]     Petition to Vacate Arbitration Award ("Petition") at 10.

[2]     *Id.* at 8.

1

reasoned basis for its decision.[3]   Rai also contends the Panel was biased.[4]

Barclays cross-petitions to confirm the arbitration award.  For the reasons

discussed below, Rai's petition to vacate is denied and Barclay's cross-petition is

granted.

## II.   BACKGROUND

On February 13, 2008, Rai was hired as an Application Support

Manager in the Information Technology ("IT") department of Barclays' New York

office.[5]  According to the express terms of his Offer Letter and the policies set

forth in Barclays' Employee Handbook, Rai was an at-will employee who could be

terminated at any time, with or without cause.[6]  James Tomkins, who hired Rai,

also acted as his supervisor during his employment.[7]  Beginning March 3, 2008,

---

[3]     *See id.* at 3.

[4]     *See id.* at 2.

[5]     *See id.* at 5; Rai's Offer Letter ("Offer Letter"), Ex. 1 to 4/7/09
Affirmation of Kevin B. Leblang, Counsel to Barclays ("Leblang Aff.").

[6]     *See* Offer Letter at 6; Employment At Will Policy in Barclays'
Employee Handbook ("Employment At Will Policy"), Ex. 2 to Leblang Aff.
("Barclays can terminate . . . employment at any time and for any reason.").

[7]     *See* Respondent's Memorandum of Law in Opposition to Petition to
Vacate Arbitration Award ("Opp. Mem.") at 4.

Rai worked on a team that provided technical support to commodities traders.[8]
Rai is Asian, as were all the other members of his group in the IT Department at
Barclays.[9]

During the period of Rai's employment, Barclays was experiencing
an ongoing problem with its Open Link software, which it used to execute trades.[10]
The glitch prevented trades from being automatically booked on the commodities
exchange, exposing Barclays to significant financial and regulatory risk.[11]  As part
of his duties, Rai was responsible for performing daily task checks to ensure there
were no systems errors and that trades were being properly booked.[12]  On July 2,
Rai received a formal performance warning from Tomkins for failing to complete
one of these task checks.[13]  Tomkins also addressed other past incidents of Rai's
poor performance, one of which cost Barclay's $18,000.[14]  He warned Rai that if

---

[8]     *See id.*

[9]     *See* Arbitration Proceeding Transcripts ("Transcripts"), Ex. A to Pet.
at 56-58.

[10]     *See* Pet. at 5-6.

[11]     *See id.* at 5; Transcripts at 24.

[12]     *See* Transcripts at 24-25.

[13]     *See id.* at 25.

[14]     *See id.* at 41.

he did not improve, he would be terminated.[15]

On July 15, 2008, a systems error prevented a trade from registering properly once again, causing a $400,000 loss.[16] Barclays blamed the loss on Rai's repeated failure to perform the daily task checks, and decided to terminate his employment.[17] On July 16, 2008, Tomkins and Natalie Naughton met with Rai to inform him of his termination. Rai claimed that he was not responsible for the error and asked for an investigation into the incident, but his request was denied.[18] At no point, however, did Rai allege that he had been the subject of discrimination.[19]

Pursuant to the Arbitration Provision of his Offer Letter from Barclays, Rai filed a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA") alleging wrongful termination, breach of contract, and employment discrimination.[20] Rai claimed that Barclays had made him the

---

[15]   *See id.* at 47.

[16]   *See* Pet. at 7.

[17]   *See* Opp. Mem. at 7.

[18]   *See* Transcripts at 55.

[19]   *See id.*

[20]   *See* Statement of Claim for FINRA Dispute Resolution Arbitration ("Statement of Claim"), Ex. E to Pet.

4

"scapegoat" for the financial losses caused by the software glitch because of his race.[21] Although other employees were more directly responsible for correcting the error, Rai claims, he was targeted based on his status as the only "non-Caucasian" in the chain of command.[22] Rai also alleged that Barclays failed to follow its own rules regarding termination for cause, which guaranteed employees notice and opportunity to cure.[23] Rai sought compensatory damages in the amount of $250,000, punitive damages in the amount of $500,000, reinstatement of his position as manager, attorneys' fees, and costs with interest.[24]

The hearing was held on November 18 and 19, 2009, before a panel of three arbitrators.[25] Before the proceeding began, Arbitrator Aaron Tyk disclosed to the parties that he was the subject of a formal inquiry into his professional ethics.[26] Despite this disclosure, both parties agreed to proceed with

---

[21]    Pet. at 5.

[22]    *See* Ex. E to Pet.

[23]    *See id.*

[24]    *See* Pet. at 8.

[25]    *See id.* at 2.

[26]    *See id.* at 6. The complaint against Tyk was eventually dismissed. *See* Arbitrator Tyk's Disclosure, Ex. 6 to Opp. Mem.

the arbitration.[27]  On the first day of the hearing, Rai testified on his own behalf.

Although he maintained that his termination was discriminatory and in breach of

his employment contract, he admitted on cross-examination that he was an at-will

employee who could be fired at any time, and that he never complained of

discrimination while working at Barclays.[28]

      Rai's counsel then informed the Panel that the only other witness he

planned on calling – Ronald Moore, an African-American former Barclays

employee who had worked with Rai – was unavailable to testify because of a

family emergency.[29]  When the Panel reconvened for the second day of the

hearing, Moore was still unavailable and could not be reached by phone.[30]  Rai

attempted to introduce Moore's Affidavit into the record in lieu of his testimony,

but Barclays' counsel objected on the grounds that he would not have the

opportunity to cross-examine the witness.[31]  The Panel determined that the

---

[27]    There is no transcript memorializing this portion of the proceeding because the record of the morning session was somehow deleted. *See* Pet. at 2.

[28]    *See* Transcripts at 17-20; 54-56.

[29]    *See id.* at 63-65.

[30]    *See id.* at 65-70.

[31]    *See id.* at 65-68.

affidavit should not be admitted.[32]  Barclays agreed to stipulate to the fact that

there was a glitch in its trading software, but not to the rest of the information

outlined in the Moore Affidavit.[33]  Rai rested his case.

Barclays then moved for a judgment as a matter of law pursuant to

Rules 12503 and 12504(b) of the FINRA Code of Arbitration Procedure for

Industry Disputes.[34]  The Panel heard oral argument on the motion.  After

adjourning for five minutes to deliberate, the Panel granted Barclay's motion.[35]

On December 2, 2009, the Arbitrators issued a written award (the "Award")

dismissing Rai's claims in their entirety.[36]

## III.   APPLICABLE LAW

### A.   Vacatur of an Arbitration Award

"It is well established that courts must grant an arbitration panel's

---

[32]     *See id.* at 70.

[33]     *See id.* at 68-72.  In his affidavit Moore also claimed that Rai was not
responsible for the software glitch, that Rai was a diligent worker who had been
made the "scapegoat" because of his status as a non-Caucasian, and that there was
a pattern of race discrimination at Barclays.  *See* 3/2/10 Affidavit of Ronald
Moore, Witness for Rai ("Moore Affidavit"), Ex. F to Pet.

[34]     *See* Transcripts at 73-74.  *See also* Opp. Mem. at 10.

[35]     *See* Transcripts at 91.

[36]     *See* Award of Arbitrators (the "Award"), Ex. B to Pet.

decision great deference."[37] "'Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'"[38] The party challenging an arbitration award "bears the heavy burden" of proving the existence of grounds for vacatur.[39]

The Federal Arbitration Act ("FAA") enumerates specific instances where an award may be vacated.[40] In addition to the statutory grounds set forth in the FAA, the Second Circuit has recognizes that a court may vacate an arbitration award rendered in "manifest disregard" of the law.[41]

### 1.    Evident Partiality of the Arbitrators

Section 10(a)(2) of the FAA allows a court to vacate an arbitration

---

[37]    *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 548 F.3d 85, 90 (2d Cir. 2008, *rev'd on other grounds*, 130 S.Ct. 1758 (2010) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003)).

[38]    *Willemijn Houdstermaatschappij, BV v. Standard Microsystems*, 103 F.3d 9, 12 (2d Cir. 1997) (quoting *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993)).

[39]    *Dufuerco*, 333 F.3d at 388. *Accord D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2007) ("A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high.").

[40]    *See* 9 U.S.C. § 10(a).

[41]    *Duferco*, 333 F.3d at 388 (internal citations omitted).

8

award "where there was evident partiality or corruption in the arbitrators, or either of them."[42] In *Morelite Construction Corp. v. New York City District Carpenters Benefit Funds,* the Second Circuit held "that 'evident partiality' . . . will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."[43] Although proof of actual bias is not required under the *Morelite* standard, the party moving to vacate an arbitration award must show more than the mere appearance of bias.[44]

The Second Circuit "precludes attacks on the qualifications of arbitrators on grounds previously known but not raised until after an award has been rendered."[45] At the outset of the proceeding, the parties have the opportunity to assess the impartiality of an arbitrator, and accept or reject him accordingly.[46]

---

[42]   9 U.S.C. § 10.

[43]   748 F.2d 79, 84 (2d Cir. 1984).

[44]   *See Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007) (citing *Morelite*, 748 F.2d at 84). *See also Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 147 (1968) (holding that a party seeking to vacate an arbitration award on the ground of evident partiality need not demonstrate that the arbitrator "was actually guilty of fraud or bias in deciding th[e] case").

[45]   *AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. International Dev. & Trade Servs.*, 139 F.3d 980, 982 (2d Cir. 1998).

[46]   *See Sanko S.S. Co.v. Cook Indus., Inc.*, 495 F.2d 1260, 1264 (2d Cir. 1973).

9

"'Where a party has knowledge of facts possibly indicating bias or partiality on the part of the arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection.'"[47]

## 2. Failure to Postpone Hearing and Refusal to Hear Evidence

Section 10(a)(3) of the FAA provides in part that a federal court may vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown."[48] When determining whether to vacate an arbitral award on these grounds, the court "examine[s] the facts and circumstances surrounding the arbitrator's refusal to grant an adjournment."[49] Judicial review of arbitration decisions is limited, however. Arbitrators are given broad latitude to grant or deny parties'

---

[47]    *AAOT Foreign Econ. Ass'n*, 139 F.2d at 982 (quoting *Ilios Shipping & Trading Corp. v. American Anthracite & Bituminous Coal Corp.*, 148 F. Supp. 698, 700 (S.D.N.Y.), *aff'd,* 245 F.2d 873 (2d Cir. 1957) (per curiam)). *Accord Cook Indus., Inc. v. C. Itoh & Co.*, 449 F.2d 106, 107-08 (2d Cir. 1971) ("Appellant cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.").

[48]    9 U.S.C. § 10.

[49]    *Allendale Nursing Home, Inc. v. Local 1115 Joint Bd.*, 377 F. Supp. 1208, 1213 (S.D.N.Y. 1974).

10

adjournment requests at their discretion.[50]  "The court will not interfere with an award on these grounds as long as there exists a reasonable basis for the arbitrators' refusal to grant a postponement."[51]

Section 10(a)(3) of the FAA also permits vacatur "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."[52]  This provision has been narrowly construed so as not to impinge on the broad discretion afforded to arbitrators to decide what evidence should be presented.[53]  Every refusal to hear potentially relevant evidence does not create grounds for vacating an arbitration award.[54]  Though "an arbitrator 'must give each of the parties to the dispute an adequate opportunity to

---

[50]     *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997) ("The granting or denying of an adjournment falls within the broad discretion of appointed arbitrators." (quoting *Storey v. Searle Blatt, Ltd.*, 685 F. Supp. 80, 82 (S.D.N.Y. 1988) (internal quotations omitted))).

[51]     *C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.*, 774 F. Supp. 146, 149 (S.D.N.Y. 1991) (citing *Storey*, 685 F. Supp. at 82).

[52]     9 U.S.C. § 10.

[53]     *See Areca, Inc. v. Oppenheimer & Co.*, 960 F. Supp. 52, 55 (S.D.N.Y. 1997) (citing *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 738 F. Supp. 789, 792 (S.D.N.Y. 1990), *aff'd,* 931 F.2d 191 (2d Cir. 1991)).

[54]     *See In re Arbitration Between Interdigital Comm. Corp. and Samsung Elec. Co.*, 528 F. Supp. 2d 340, 351 (S.D.N.Y. 2007) (citing *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 818 (D.C. Cir. 2007)).

11

present its evidence and arguments,'" he is "not required to hear all the evidence proffered by a party."[55] "'Arbitrators must be given discretion to determine whether additional evidence is necessary or would simply prolong the proceedings.'"[56]

The Second Circuit has recognized "that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review."[57] "In other words, a panel's erroneous refusal to hear 'pertinent and material' evidence will only provide a basis for vacatur if the decision deprives a party of a fundamentally fair arbitration process."[58] In the Second Circuit, moreover, "'manifest disregard of the evidence [is not a] proper ground for vacating an arbitrator's award.'"[59] Vacatur is only permitted where the arbitrator's

---

[55]     *Tempo Shain*, 120 F.3d at 20 (quoting *Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985)).

[56]     *Id.* at 19 (quoting *Catz American Co. v. Pearl Grange Fruit Exch., Inc.*, 292 F. Supp. 549, 553 (S.D.N.Y. 1968)).

[57]     *Id.* ("Federal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair.").

[58]     *In re Interdigital Comm. Corp.*, 528 F. Supp. 2d at 351 (citing *Tempo Shain*, 120 F.3d at 20).

[59]     *Stolt-Nielsen*, 548 F.3d at 91 (quoting *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004)).

12

exclusion of evidence prejudices one of the parties.[60]

### 3.    Manifest Disregard of the Law

"The party seeking to vacate an award on the basis of the arbitrator's alleged 'manifest disregard' of the law bears a 'heavy burden.'"[61] Review under the manifest disregard doctrine is "'severely limited'" and "'highly deferential to the arbitral award.'"[62] "A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law. On the contrary, the award 'should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.'"[63] A reviewing court may vacate an arbitral award on these grounds only in "those exceedingly rare instances where some egregious impropriety on

---

[60]    *See Areca*, 960 F. Supp. at 54 (citing *Hoteles Condado Beach*, 763 F.2d at 39-40).

[61]    *Stolt-Nielsen*, 548 F.3d at 91 (quoting *GMS Group, LLC v. Benderson*, 326 F.3d 75, 81 (2d Cir. 2003)).

[62]    *Id.* (quoting *Duferco*, 333 F.3d at 389 (internal citations omitted)).

[63]    *Wallace*, 378 F.3d at 190 (quoting *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)). *Accord Stolt-Nielsen*, 548 F.3d at 91 ("In this light, 'manifest disregard' has been interpreted 'clearly [to] mean[ ] more than error or misunderstanding with respect to the law.'") (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986)).

13

the part of the arbitrators is apparent."[64]  To constitute manifest disregard, the

court must find that "'the arbitrator knew of the relevant [legal] principle,

appreciated that this principle controlled the outcome of the disputed issue, and

nonetheless willfully flouted the governing law by refusing to apply it.'"[65]

Obtaining judicial relief on these grounds is rare.[66]

Recently, the Supreme Court called the viability of the manifest

disregard doctrine into doubt with its decision in *Hall Street Associates, LLC v.

Mattel, Inc.*[67]  The Second Circuit subsequently confirmed in *Stolt-Nielsen, S.A. v.

AnimalFeeds International Corp.* that manifest disregard "remains a valid ground

for vacating arbitration awards."[68]  The court made clear "that it reads *Hall Street*

as 'reconceptualiz[ing]' manifest disregard 'as a judicial gloss on the specific

---

[64]  *Duferco*, 333 F.3d at 389.

[65]  *Stolt-Nielsen*, 548 F.3d at 65 (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 217 (2d Cir. 2002)).

[66]  *See Duferco*, 333 F.3d at 389 ("since 1960 we have vacated some part or all of an arbitral award for manifest disregard in . . . four out of at least 48 cases where we applied the standard.").

[67]  552 U.S. 576, 584 (2008) (holding that the grounds for vacatur of an arbitration award set forth in the FAA are "exclusive").

[68]  548 F.3d at 94.

14

grounds for vacatur' of arbitration awards under 9 U.S.C. § 10."[69]

## B.    Confirmation of an Arbitration Award

Under the FAA, parties who have received an arbitration award entered in their favor can petition the court for an order confirming the award.[70] "[T]he court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."[71] "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case."[72] The court must uphold the award so long as there is "'a barely colorable justification for the outcome reached'" by the arbitrators.[73]

## IV.   DISCUSSION

## A.    Vacatur of the Award

---

[69]    *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (citing and quoting *Stolt-Nielsen*, 548 F.3d at 94-95). The Supreme Court granted certiorari for *Stolt-Nielsen* on other grounds. On review, the Court did not reach the question of whether manifest disregard survived *Hall Street* "as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10." *Stolt-Nielsen*, 130 S.Ct. at 1763 n.3.

[70]    *See* 9 U.S.C. § 9.

[71]    *Id.*

[72]    *D.H. Blair*, 462 F.3d at 110 (quotation marks omitted).

[73]    *T.Co Metals*, 592 F.3d at 339 (quoting *Stolt-Nielsen*, 548 F.3d at 92).

15

## 1.   Evident Partiality of the Arbitrators

Rai asks the court to vacate the arbitration award entered in favor of

Barclays on the grounds that the Panel "demonstrated blatant and unbridled bias

and partiality."[74] Rai asserts that the inquiry into Arbitrator Tyk's professional

ethics "creates the appearance of bias."[75] Based on these allegations alone, section

10(a)(2) does not provide relief. Under *Morelite*, the moving party must show

more than the mere appearance of bias to permit vacatur.[76] Rai, however, offers no

evidence linking Tyk's purported unethical conduct with partiality in favor of

Barclays.[77]

In his Reply Memorandum, Rai attempts to demonstrate partiality by

claiming the Panel refused to consider relevant evidence, but this confuses the

bases for relief under the FAA.[78] He also contends that Tyk was responsible for

deleting the recording of the first arbitration session, and that the Panel took only

---

[74]   Petitioner's Reply to Respondent's Memorandum of Law in Opposition to Petition to Vacate Arbitration Award ("Pet. Reply") at 14.

[75]   Pet. at 2. Rai alludes to, but does not directly cite, 9 U.S.C. § 10(a)(2) in his Petition. He makes direct reference to the provision, however, in his reply brief. *See* Pet. Reply at 14.

[76]   *See* 748 F.2d at 84-85.

[77]   Opp. Mem. at 19.

[78]   *See* Pet. Reply at 15-16.

16

five minutes to deliberate (allegedly demonstrating that Tyk decided the case unilaterally).[79]   These allegations, however, do not support his claims of partiality, because there is no reason to believe the lack of a transcript or brief deliberations prejudiced the determination of his case.  While Rai need not prove actual bias, it is not the case that a "reasonable person would have to conclude that [the] arbitrator was partial to one party to the arbitration."[80]

Unlike in *Morelite*, moreover, Tyk disclosed to the parties at the outset of the proceeding that he was being investigated for unethical conduct.[81]  Rai had the opportunity to object, but knowingly and voluntarily consented to continuing with the arbitration.[82]  Rai cannot remain silent about the perceived partiality, and then later object when the Panel reaches a decision he dislikes.  His silence constitutes a waiver of his right to object on those grounds.[83]

---

[79]    *See* 4/29/10 Affidavit of Guya Singh Rai in Support of Petitioner's Reply to Respondent's Memorandum of Law ("Rai Affidavit"), attached to Pet. Reply at 7.

[80]    *Morelite*, 748 F.2d at 84-85.

[81]    *See id.* (holding that an arbitrator's failure to disclose that he was related to one of the parties to the dispute constituted "evident partiality" requiring the court to vacate the arbitration award).

[82]    *See* Opp. Mem. at 18.

[83]    *See AAOT Foreign Econ. Ass'n*, 139 F.3d at 982.

17

## 2. Failure to Postpone Hearing and Refusal to Hear Evidence

Rai also petitions for vacatur on the grounds that the Panel committed misconduct "by refusing to postpone the hearing in part, and refusing to hear evidence, pertinent and material to the Petitioner's claims, wholly ignoring sworn testimony relevant to Petitioner's claims and refusing to allow the testimony of relevant witnesses."[84] Rai contends that the Panel erred in granting Barclays' Motion to Dismiss before hearing Moore's testimony, and should have postponed the hearing until Moore was available to testify.[85] The Panel's refusal to permit the Moore Affidavit to be entered into the record, Rai argues, further demonstrates misconduct in failing to consider relevant evidence.[86] Rai also contends that the Panel denied him the opportunity to challenge Barclays' claims regarding the "same actor" defense by dismissing the claims in their entirety before hearing

---

[84]    Pet. at 10. In support of his allegations, the Petitioner erroneously relied on 9 U.S.C. § 10(a)(1), which provides in relevant part that an arbitration award may be vacated "where the award was procured by corruption, fraud, or undue means." As the Respondent points out, though Rai cites § 10(a)(1) of the FAA in his Petition, he actually appears to be relying on § 10(a)(3). *See* Opp. Mem. at 13. In his reply brief, the Petitioner abandons § 10(a)(1) as his basis for relief, and focuses his discussion on § 10(a)(3). *See* Pet. Reply at 11-13. Though the issue was not properly raised, the Court will consider whether the arbitration award should be vacated on these grounds.

[85]    *See* Pet. Reply at 13.

[86]    *See id.* at 11.

Tomkins' testimony.[87]

Rai's arguments fail. The decision to exclude the Moore Affidavit, both on the basis of the Respondent's inability to cross-examine the witness and the irrelevance of the facts therein to its assessment of the evidentiary record, was entirely within the Panel's discretion.[88] The Petitioner sought to introduce the Moore Affidavit for three main reasons: its documentation of the Open Link systems error, details of Rai's employment history, and description of "a pattern of race discrimination at Barclays."[89] Barclays, however, stipulated to the information regarding the software glitch.[90] The Panel could have decided that Moore's testimony regarding Rai's work performance was irrelevant because Rai was an at-will employee, or because Moore worked in a different department, or because they did not consider him a reliable witness.[91] So long as there is a "barely colorable" explanation for the Panel's decision, the arbitration award must

---

[87]    *See* Pet. at 9. In oral argument in support of the Motion to Dismiss, the Respondent argued in effect that Rai's termination could not have been discriminatory because the "same actor" – Tomkins – both hired and fired Rai. Transcripts at 77.

[88]    *See* Transcripts at 65-68, 70.

[89]    Pet. at 9.

[90]    *See* Transcripts at 74.

[91]    *See* Opp. Mem. at 16-17.

19

be confirmed.[92]  There is no basis for claiming that the arbitrators' decisions rise to the level of affirmative misconduct.

Nor can the Petitioner argue that the Panel erred "in refusing to postpone the hearing, upon sufficient cause shown" because counsel did not in fact request that the session be adjourned until Moore became available to testify. After it became clear that Moore would not appear as scheduled on the second day of the hearing and the parties discussed the admissibility of his affidavit, Rai rested his case.[93]  Petitioner's reliance on *Allendale Nursing Home, Inc. v. Local 1115 Joint Board*[94] is misplaced because, unlike in *Allendale Nursing*, the Panel here did not deny a valid request for postponement; no such request was ever made.  Rai's claim that the Panel erroneously granted the Respondent's motion "knowing full well that there was still more testimony to be heard"[95] is rendered moot by his voluntary decision to rest his case.

Petitioner's section 10(a)(3) claim regarding Tomkins' testimony is

---

[92]     *See T.Co Metals*, 592 F.3d at 339.

[93]     *See* Transcripts at 72.

[94]     377 F. Supp. 1208 (S.D.N.Y. 1974) (holding that arbitrator's refusal to grant an adjournment when noticeably ill witness was sent to hospital constituted misconduct requiring the court to vacate the arbitration award).

[95]     Pet. Reply at 13.

20

equally unavailing. Contrary to the Petitioner's allegations, the Panel did not prevent Tomkins from testifying. In fact, Rai did not call Tomkins as a witness on his behalf. He rested his case with full knowledge that Barclays intended to file a motion to dismiss, and that Tomkins – a witness for the Respondent – would not be able to testify if that motion were granted.[96] The absence of Tomkins' testimony from the record, therefore, cannot be attributed to misconduct on the part of the Panel. Rai had every opportunity to call witnesses and introduce evidence into the record. The Panel's decision did not deprive him of a "fundamentally fair arbitration process," and therefore cannot be grounds for vacatur under section 10(a)(3) of the FAA.

### 3. Manifest Disregard of Law

Rai contends that the Panel's failure to provide an explanation for the award or disclose its reasoning for dismissing the case must "lead to the conclusion that there was no legal basis to dismiss his claims."[97] The Second Circuit has made clear, however, that an arbitration panel need not provide the rationale for its award, so long as the grounds for the arbitrators' decision can be

---

[96]   *See* Opp. Mem. at 15.

[97]   Pet. at 3.

21

inferred from the facts of the case.[98] Rai admitted that he was an at-will employee who could be hired or fired at any time. He provided no evidence aside from his own testimony to support the claim that Barclays fired him because of his race rather than for legitimate reasons. The Respondent rebutted the allegations of discrimination by pointing out that Rai had been warned many times about his poor performance prior to being fired, that he never complained of discrimination in the workplace, and that all his colleagues were Asian.[99] Rai's claims of discrimination were further undermined by the fact that the person hired to replace him was also Asian.[100] Clearly these explanations provide more than a "barely colorable justification" for the Panel's decision.[101]

While the Petitioner cites *McDonnell Douglas Corp. v. Green* for the legal standard governing claims of racial discrimination,[102] he provides no evidence to suggest that the arbitrators "willfully flouted the governing law by

---

[98] *See D.H. Blair*, 462 F.3d at 110.

[99] *See* Transcripts at 77-79.

[100] *See id.* at 56-68.

[101] *D.H. Blair*, 462 F.3d at 110.

[102] 411 U.S. 792 (1973).

22

refusing to apply it."[103] The Panel dismissed Rai's claims because he failed to meet his burden of proof on his discrimination claim, and there is no reason to believe the arbitrators misapplied the standard. But even if they had, the court cannot vacate an arbitration award because the arbitrators reached an erroneous legal conclusion.[104] Where there is a reasonable explanation for the outcome reached by the arbitrators, the award must be confirmed.

## V.    CONCLUSION

For the reasons set forth above, Rai's petition to vacate the arbitration award is hereby denied and Barclays' cross-petition to confirm the award is granted. The Clerk of the Court is directed to close this motion (docket #1) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              June 14, 2010

---

[103]    *Stolt-Nielsen*, 548 F.3d at 95.

[104]    *See Wallace*, 378 F.3d at 190.

23

## - Appearances -

**For Petitioner:**

Walker G. Harman, Jr., Esq.
The Harman Firm, P.C.
19 Fulton Street, Suite 408
New York, New York 10038
(212) 425-2600

**For Respondent:**

Kevin B. Leblang, Esq.
Eliza A. Kaiser, Esq.
Kramer, Levin, Naftalis, & Frankel, LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100